FILED

# UNITED STATES DISTRICT COURT

2008 FEB 19 PM 1:32

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

# SOUTHERN DISTRICT OF CALIFORNIA

BY_____ KNH _____DEPUTY

## ARREST ON OUT-OF-DISTRICT OFFENSE

CASE NUMBER: __'08 MJ 0478__

The person charged as __CASTANEDA, Omar Rivera__ now appears before this United States District Court for an initial appearance as a result of the following charges having been filed in the United States District Court for the __Central__ District of __California__ on

__08/16/07__ with: __Title 21, 18 USC 846 (a)(1) & 841(b)(1)__ in violation

of:

**Conspiracy to Distribute Cocaine an Methamphetamine;**
**Conspiracy to Launder Money;**
**Money Laundering**

The charging documents and the warrant for the arrest of the defendant which was issued by the above United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: ____02/19/08____

Brian Caserta
CI -Deputy United States Marshal

Reviewed and Approved

DATE: 02 - 19 - 08

Assistant United States Attorney

# MAGISTRATE JUDGE INFORMATION SHEET

## MAGISTRATE CASE NUMBER:

1. Hearing Date _____  2. AUSA _____  3. Mag Judge _____

4. USAO # _____  5. Agency # _____

6. Defendant #: _____ of _____  7. Case Agent _____

8. Charges:  Title 21: 18 USC 846,841(a)(1)

9. Defendant's Name:  CASTANEDA, Omar Rivera  10. Social Security #:  unknown

11. Alias: _____  12. Birth Date:  11/26/69

13. Address:  401 E. 12th Street #23, Los Angeles, CA

14. Arrest Date:  02/17/08  15. Place of Arrest:  San Ysidro POE  16. Date Committed:  02/17/08

17. Agent(s):  CI-DUSM Paul Beal  18. Office Phone #:  (619) 557-7482

19. Agency:  U.S. Marshals Service  20. Station:  San Diego, CA

21. Custody:  xYes  No

22. Citizenship:  U.S.  Mex  Other

23. INS Status:  Res ☐  BCC ☐  Other ☐

24. Prior Deports: _____  25. IDENT Hits: _____

26. Prior Record:  •

27. Drug Usage: _____  How Evidenced? _____

28. Cash on Defendant: _____  29. Other Evidence: _____

30. Agent Fact Summary:

- CASTANEDA was arrested on 02/17/08, by Deputy Beal. He was taken into custody @ San Ysidro POE on 02/17/08, on Out-of-District Indictment W#CR 07-00818 issued 08/16/07, out of Los Angeles, CA.

31. Agent's info re: Defendant (Employment, Family, etc.) _____

32. Def Attorney:  Appointed ☐  Retained ☐

33. DEFENSE ATTORNEY: _____  PHONE NUMBER: _____

34. Next Date for:  PH Removal  Date _____  Time _____  Detention  Date _____  Time _____

35. Bond Set: _____

36. Material Witness Custodial Status:  Custody  Not in Custody

37. MATERIAL WITNESS ATTORNEY: _____  PHONE NUMBER: _____

Court's Orders/Motions  Government's Notes for Bail

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States of America | CASE NUMBER |
|---|---|
| Plaintiff(s) | CR 07-00818 |
| v. | |
| OMAR RIVERA CASTANEDA | **WARRANT FOR ARREST** |
| Defendant(s) | **UNDER SEAL** |

TO:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest   **OMAR RIVERA CASTANEDA**
and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): ☐Complaint ■Indictment
☐Information    ☐Order of Court    ☐Probation Violation Petition    ☐Violation Notice
charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

**Conspiracy to Distribute Cocaine and Methamphetamine;**
**Conspiracy to Launder Money;**
**Money Laundering**

in violation of Title **21:18**, United States Code,
Section(s) **846, 841(a)(1), 841(b)(1)(A):1956(h), 1956(a)(2):1956(a)(2):**

| Sherri R. Carter | | |
|---|---|---|
| NAME OF ISSUING OFFICER | August 16, 2007 | LOS ANGELES, CALIFORNIA |
| Clerk of Court | DATE AND LOCATION OF ISSUANCE | |
| TITLE OF ISSUING OFFICER | | |
| **JANET AGHBOLAGHI** | BY: ANDREW J. WISTRICH | |
| SIGNATURE OF DEPUTY CLERK | NAME OF JUDICIAL OFFICER | |

**RETURN**

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION):

| DATE RECEIVED | NAME OF ARRESTING OFFICER |
|---|---|
| DATE OF ARREST | TITLE |
| DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO | SIGNATURE OF ARRESTING OFFICER |

**WARRANT FOR ARREST**

CR-12 (07/04)                                                                                    PAGE 1 OF 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

United States of America

|                          |              |
|--------------------------|--------------|
| Plaintiff(s)             | CASE NUMBER: |
|                          | CR           |
| v.                       |              |

OMAR RIVERA CASTANEDA

|                          | **WARRANT FOR ARREST** |
|--------------------------|------------------------|
| Defendant(s)             | **UNDER SEAL**         |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: | |
|-------|------|---------|---------|-------|-------|--------|--|
| **DATE OF BIRTH:** | | **PLACE OF BIRTH:** | | **SOCIAL SECURITY NO.** | | **DRIVER'S LICENSE NO.** | **ISSUING STATE** |
| **ALIASES:** | | **SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS:** | | | | | |
| **AUTO YEAR:** | **AUTO MAKE:** | **AUTO MODEL:** | | **AUTO COLOR:** | | **AUTO LICENSE NO.** | **ISSUING STATE** |
| **LAST KNOWN RESIDENCE:** | | | | **LAST KNOWN EMPLOYMENT:** | | | |
| **FBI NUMBER:** | | | | | | | |
| **ADDITIONAL INFORMATION:** | | | | | | | |

| **INVESTIGATIVE AGENCY NAME:** | | **INVESTIGATIVE AGENCY ADDRESS:** |
|--------------------------------|--|-----------------------------------|

**NOTES:**

2007 AUG 17 PM 12: 03

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 07- **07-00818** |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A): Conspiracy to Distribute Cocaine and Methamphetamine; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B): Possession with Intent to Distribute Cocaine; 21 U.S.C. § 843(b): Use of a Communication Facility In Committing a Felony Drug Offense; 18 U.S.C. §§ 1956(h), 1956(a)(2): Conspiracy to Launder Money; 18 U.S.C. § 1956(a)(2): Money Laundering] |
| JORGE SERRANO PAYAN, aka "the Doctor," JOSEPH GALAVIZ LANGER, MARICELA LANGER, GONZALO GALAVIZ, VANESSA GALAVIZ, OMAR BELTRAN, FRANCISCO BELTRAN, FERNANDO BENITEZ GASTELUM, JOSE BENITEZ GASTELUM, HUMBERTO LANDELL-RUELAS, aka "Beto," ANTONIO BARBA, JR., MARCOS VELASQUEZ-CASTRO, ALBERTO DAVID RUBIO ZAMORA, aka "El Mudo," OMAR RIVERA CASTANEDA, JOSE RAMON GARCIA, and JESUS AGUILAR, aka "Jesse Zamora," | |
| Defendants. | |

///
///
///

CB:cb

TJS

1   The Grand Jury charges:

2        COUNT ONE

3     [21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)]

4 A. OBJECTS OF THE CONSPIRACY

5   Beginning on a date unknown, and continuing to on or about

6 August 16, 2007, in Los Angeles, Riverside and San Bernardino

7 Counties, within the Central District of California and

8 elsewhere, defendants JORGE SERRANO PAYAN, also known as ("aka")

9 "El Doctor" ("PAYAN"), JOSEPH GALAVIZ LANGER ("J. LANGER"),

10 MARICELA LANGER ("M. LANGER"), GONZALO GALAVIZ ("G. GALAVIZ"),

11 VANESSA GALAVIZ ("V. GALAVIZ"), OMAR BELTRAN ("O. BELTRAN"),

12 FRANCISCO BELTRAN ("F. BELTRAN"), FERNANDO BENITEZ GASTELUM ("F.

13 BENITEZ"), JOSE BENITEZ GASTELUM ("J. BENITEZ"), HUMBERTO

14 LANDELL-RUELAS, aka "Beto" ("LANDELL-RUELAS"), ANTONIO BARBA, JR.

15 ("BARBA"), MARCOS VELASQUEZ-CASTRO ("VELASQUEZ-CASTRO"), ALBERTO

16 DAVID RUBIO ZAMORA, aka El Mudo ("ZAMORA"), OMAR RIVERA CASTANEDA

17 ("CASTANEDA"), JOSE RAMON GARCIA ("GARCIA"), JESUS AGUILAR, aka

18 "Jesse Zamora" ("AGUILAR"), and others known and unknown to the

19 Grand Jury, knowingly and intentionally conspired and agreed with

20 each other to:

21   1. Distribute more than 5 kilograms of a mixture or

22 substance containing a detectable amount of cocaine, a schedule

23 II narcotic drug controlled substance, in violation of Title 21,

24 United States Code, Sections 841(a)(1) and 841(b)(1)(A);

25 ///

26 ///

27 ///

28 ///

2

1     2.  Distribute more than 500 grams of a mixture or substance

2  containing a detectable amount of methamphetamine or more than 50

3  grams of actual methamphetamine, a schedule II narcotic drug

4  controlled substance, in violation of Title 21, United States

5  Code, Sections 841(a)(1) and 841(b)(1)(A).

6  B.  <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

7     <u>ACCOMPLISHED</u>

8     The objects of the conspiracy were to be accomplished in

9  substance as follows:

10     1.  PAYAN directed J. LANGER, M. LANGER, and G. GALAVIZ to

11  receive and maintain shipments of cocaine for distribution.

12     2.  PAYAN directed J. LANGER and M. LANGER to distribute the

13  cocaine to O. BELTRAN, F. BELTRAN, F. BENITEZ, J. BENITEZ,

14  LANDELL-RUELAS, BARBA, VELASQUEZ-CASTRO, GARCIA, AGUILAR and

15  others for distribution.

16     3.  J. LANGER, M. LANGER, G. GALAVIZ, V. GALAVIZ and others

17  maintained cocaine, proceeds from the sale of cocaine, and other

18  items related to their illegal cocaine distribution, at their

19  residences.

20     4.  J. LANGER, M. LANGER, G. GALAVIZ, V. GALAVIZ, ZAMORA and

21  others transported drug proceeds derived from the sale of cocaine

22  in the United States and delivered those proceeds to PAYAN and

23  others in Mexico.

24     5.  M. LANGER and V. LANGER coordinated information

25  regarding arrests of organization members in order to aid

26  organization members' efforts to thwart detection by law

27  enforcement.

28  ///

3

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, PAYAN, J. LANGER, M. LANGER, G. GALAVIZ, V. GALAVIZ, O. BELTRAN, F. BELTRAN, F. BENITEZ, J. BENITEZ, LANDELL-RUELAS, BARBA, VELASQUEZ-CASTRO, ZAMORA, CASTANEDA, GARCIA, AGUILAR and others known and unknown to the Grand Jury, committed various overt acts, on or about the following times and dates, within the Central District of California, and elsewhere, including but not limited to the following:

1.    On October 31, 2005, J. LANGER transported approximately $56,727 of drug proceeds from his residence in Lake Elsinore, California to the United States-Mexico border.

2.    On February 11, 2006, by telephone using coded language, PAYAN directed J. LANGER to retrieve $24,000 in drug proceeds from GARCIA.

3.    On February 13, 2006, by telephone using coded language, J. LANGER arranged to meet GARCIA in the parking lot of an AM/PM convenience store in Fontana, California in order to collect drug proceeds from GARCIA.

4.    On February 13, 2006, J. LANGER met with GARCIA at the AM/PM convenience store in Fontana, California and retrieved $24,000 in drug proceeds from GARCIA.

5.    On February 16, 2006, J. LANGER drove a rented car to a Chevron gas station in Lake Elsinore, California and met with an unidentified co-conspirator, who was driving a tan Ford Expedition, and the two then drove in tandem back to J. LANGER's residence in Lake Elsinore, California.

4

6.   On February 16, 2006, by telephone using coded language, J. LANGER told PAYAN that the deal had been completed and J. LANGER had received 36 kilograms of cocaine.

7.   On February 16, 2006, by telephone using coded language, PAYAN directed J. LANGER to retrieve drug proceeds from J. LANGER's residence and then meet with PAYAN at a Burger King restaurant in order to deliver the drug proceeds to PAYAN.

8.   On February 16, 2006, by telephone using coded language, J. LANGER advised PAYAN that J. LANGER, M. LANGER and V. GALAVIZ were at a Staples store in Norco, California and were prepared to deliver drug proceeds to PAYAN.

9.   On February 16, 2006, J. LANGER met with PAYAN at a Staples store parking lot in Norco, California and delivered several cellophane-wrapped bundles which contained approximately $187,971 in United States currency to PAYAN.

10.   On February 16, 2006, by telephone using coded language, J. LANGER told GARCIA that J. LANGER had been directed to deliver six kilograms of cocaine to GARCIA, and J. LANGER asked GARCIA to meet at the parking lot of a McDonald's restaurant.

11.   On February 16, 2006, by telephone using coded language, J. LANGER directed GARCIA to meet J. LANGER at a Del Taco restaurant, because J. LANGER had observed law enforcement officers present at the McDonald's parking lot.

12.   On February 16, 2006, by telephone, M. LANGER advised GARCIA that J. LANGER was present at the meeting location and was in the restroom.

13.   On February 16, 2006, by telephone using coded

5

1  language, J. LANGER advised PAYAN that J. LANGER had completed

2  the delivery to GARCIA.

3      14.  On August 15, 2006, by telephone using coded language,

4  PAYAN and J. LANGER discussed GALAVIZ joining the conspiracy, and

5  J. LANGER advised PAYAN that GALAVIZ would not be permitted to

6  cooperate with law enforcement if he were apprehended and that he

7  would have to accept any punishment imposed on him because co-

8  conspirators would be obligated to provide for his family.

9      15.  On August 16, 2006, by telephone using coded language,

10  J. LANGER told PAYAN that G. GALAVIZ had agreed to transport

11  narcotics, provided that co-conspirators would attempt to

12  identify "check points" at the border between the United States

13  and Mexico, in order to prevent G. GALAVIZ from being stopped and

14  identified by law enforcement.

15      16.  On August 16, 2006, by telephone using coded language,

16  J. LANGER told PAYAN that J. LANGER had advised G. GALAVIZ that

17  G. GALAVIZ would be provided with a car that would have hidden

18  compartments installed for him to use in the shipment of cocaine.

19      17.  On August 16, 2006, by telephone using coded language,

20  J. LANGER advised PAYAN that J. LANGER or M. LANGER could travel

21  to Mexico with a newly-recruited drug courier, and PAYAN answered

22  that PAYAN would make arrangements for a shipment of cocaine in

23  Mexico.

24      18.  On August 17, 2006, by telephone using coded language,

25  PAYAN advised J. LANGER that PAYAN was going to need J. LANGER

26  that day, because PAYAN was expecting a shipment of cocaine to be

27  delivered that night.

28      19.  On August 17, 2006, by telephone using coded language,

6

1  PAYAN directed J. LANGER to take drug proceeds to an unidentified
2  co-conspirator in Mexicali, Mexico and have G. GALAVIZ follow him
3  in G. GALAVIZ' vehicle to determine if a hidden compartment could
4  be installed in G. GALAVIZ' vehicle.

5       20. On August 18, 2006, by telephone using coded language,
6  J. LANGER directed an unidentified co-conspirator to meet J.
7  LANGER in the parking lot near an El Pollo Loco restaurant in
8  Lake Elsinore, California in order to deliver 46 kilograms of
9  cocaine.

10      21. On August 18, 2006, J. LANGER met with an unidentified
11 co-conspirator near the El Pollo Loco restaurant and then drove
12 in tandem with the unidentified co-conspirator to J. LANGER's
13 residence on McKinley Drive in Lake Elsinore, California.

14      22. On August 18, 2006, by telephone using coded language,
15 PAYAN advised J. LANGER that he should have received 46 kilograms
16 of cocaine and that only a few of the kilograms would have been
17 damaged in the shipment.

18      23. On August 18, 2006, by telephone using coded language,
19 J. LANGER advised PAYAN that 46 kilograms of cocaine had been
20 delivered, and J. LANGER advised PAYAN that he believed F.
21 BELTRAN might purchase the kilograms of cocaine.

22      24. On August 19, 2006, by telephone using coded language,
23 PAYAN advised J. LANGER to meet O. BELTRAN and F. BELTRAN in
24 order to deliver cocaine to them, and they identified a location
25 near the intersection of the 210 and 5 freeways.

26      25. On August 19, 2006, by telephone using coded language,
27 O. BELTRAN directed J. LANGER to the location where he and F.
28 BELTRAN intended to meet and take delivery of approximately 29

7

1   kilograms of cocaine from J. LANGER

2       26.  On August 19, 2006, by telephone using coded language,
3   J. LANGER advised PAYAN that O. BELTRAN had given J. LANGER
4   directions to the meeting location and that J. LANGER was driving
5   on the 210 freeway towards Interstate 5, in order to deliver
6   cocaine, as directed by PAYAN.

7       27.  On August 19, 2006, J. LANGER drove to a Ralph's
8   grocery store parking lot in Mission Hills, California and
9   delivered approximately 29 kilograms of cocaine to O. BELTRAN and
10  F. BELTRAN.

11      28.  On August 19, 2006, O. BELTRAN drove from the Ralph's
12  grocery store parking lot in Mission Hills, California with F.
13  BELTRAN and approximately 29 kilograms of cocaine and conducted
14  counter-surveillance driving techniques, in order to identify the
15  possible presence of law enforcement officers in the area.

16      29.  On September 20, 2006, by telephone using coded
17  language, J. LANGER told PAYAN that F. BENITEZ had inspected
18  cocaine and had taken 10 kilograms, and PAYAN directed J. LANGER
19  to call ZAMORA.

20      30.  On September 20, 2006, by telephone using coded
21  language, PAYAN directed J. LANGER to deliver 10 kilograms of
22  cocaine to LANDELL-RUELAS.

23      31.  On September 20, 2006, by telephone using coded
24  language, J. LANGER arranged to meet with LANDELL-RUELAS at a
25  Sav-On drugstore parking lot in Diamond Bar, California in order
26  to deliver cocaine to LANDELL-RUELAS.

27      32.  On September 20, 2006, J. LANGER drove a gold 2005
28  Dodge Caravan to the Sav-On drugstore parking lot in Diamond Bar,

1  California and delivered approximately 10 kilograms of cocaine to
2  LANDELL-RUELAS.

3      33.  On September 22, 2006, by telephone using coded
4  language, F. BENITEZ called J. LANGER two times and told J.
5  LANGER that F. BENITEZ and J. BENITEZ had obtained five kilograms
6  of cocaine from J. LANGER the previous Friday.

7      34.  On September 22, 2006, by telephone using coded
8  language, J. BENITEZ told J. LANGER that F. BENITEZ had called
9  previously and would need to speak with J. LANGER to coordinate a
10  cocaine transaction and asked if F. BENITEZ could call J. LANGER.

11      35.  On September 22, 2006, by telephone using coded
12  language, J. LANGER told PAYAN that J. BENITEZ and F. BENITEZ had
13  contacted J. LANGER, and PAYAN directed J. LANGER to identify the
14  amount of cocaine that J. BENITEZ and F. BENITEZ wanted to
15  purchase.

16      36.  On September 22, 2006, by telephone using coded
17  language, F. BENITEZ told J. LANGER that F. BENITEZ needed only
18  one kilogram of cocaine at that time, and J. LANGER told F.
19  BENITEZ that J. LANGER would speak to PAYAN about the transaction
20  and would meet with F. BENITEZ at an Arco gas station in one
21  hour.

22      37.  On September 22, 2006, by telephone using coded
23  language, J. LANGER advised PAYAN that F. BENITEZ wanted one
24  kilogram of cocaine and that J. LANGER had offered to deliver it
25  in one hour, and PAYAN told J. LANGER to take the "best" kilogram
26  of cocaine to F. BENITEZ.

27      38.  On September 22, 2006, by telephone using coded
28  language, J. LANGER told F. BENITEZ that J. LANGER would deliver

9

1  one kilogram of cocaine to F. BENITEZ at a location on Sixth

2  Street, near the Interstate 15 freeway in Norco, California, and

3  that F. BENITEZ should provide payment for the cocaine at the

4  same time.

5     39.  On September 22, 2006, J. LANGER drove a Jeep Cherokee

6  to a Sizzler parking lot near Interstate 15 in Riverside County

7  and delivered cocaine to F. BENITEZ.

8     40.  On September 22, 2006, by telephone using coded

9  language, J. LANGER told PAYAN that J. LANGER met with F.

10  BENITEZ, delivered cocaine and collected $12,500 from F. BENITEZ.

11     41.  On October 12, 2006, by telephone using coded language,

12  PAYAN directed J. LANGER to retrieve drug proceeds from LANDELL-

13  RUELAS and to await further directions from PAYAN.

14     42.  On October 12, 2006, LANDELL-RUELAS and BARBA drove a

15  Chrysler convertible sedan to the San Gabriel Tacos restaurant in

16  Baldwin Park, California and delivered approximately 13 kilograms

17  of cocaine to VELASQUEZ-CASTRO and an unindicted co-conspirator.

18     43.  On October 16, 2006, by telephone using coded language,

19  J. LANGER directed an unidentified co-conspirator to meet J.

20  LANGER in the parking lot of an El Pollo Loco restaurant in Lake

21  Elsinore, California, so that J. LANGER could deliver $20,000 in

22  drug proceeds to an unidentified co-conspirator, as J. LANGER had

23  been directed to do by PAYAN.

24     44.  On October 16, 2006, an unidentified co-conspirator

25  drove a black car, bearing Mexican license plates to the El Pollo

26  Loco parking lot in Lake Elsinore, California and met with J.

27  LANGER.

28     45.  On October 17, 2006, at approximately 1:00 p.m., by

1  telephone using coded language, PAYAN advised J. LANGER that an

2  unindicted co-conspirator would deliver cocaine to J. LANGER.

3      46.   On October 17, 2006, by telephone using coded language,

4  J. LANGER directed an unindicted co-conspirator to meet him at

5  the El Pollo Loco restaurant in Lake Elsinore, California, and

6  the unindicted co-conspirator told J. LANGER that he would be

7  driving a black Mitsubishi Montero.

8      47.   On October 17, 2006, by telephone using coded language,

9  J. LANGER told PAYAN that J. LANGER was en route to receive the

10  car which was transporting the load of cocaine, and PAYAN told J.

11  LANGER that the driver of the load vehicle might need to take the

12  car to J. LANGER's residence in order to open the hidden

13  compartment and remove the cocaine from the car.

14      48.   On October 17, 2006, J. LANGER drove to the El Pollo

15  Loco restaurant in Lake Elsinore, California and met with the

16  driver of a black Mitsubishi Montero, and then drove in tandem

17  with the driver of the Montero towards J. LANGER's residence.

18      49.   On October 17, 2006, by telephone using coded language,

19  J. LANGER called PAYAN and advised PAYAN that an unindicted co-

20  conspirator had been stopped by law enforcement officers.

21      50.   On October 17, 2006, by telephone using coded language,

22  J. LANGER advised PAYAN that the car driven by an unindicted co-

23  conspirator had been towed by law enforcement officers, and PAYAN

24  directed J. LANGER to "dump" his telephone.

25      51.   On October 27, 2006, by telephone using coded language,

26  M. LANGER and GALAVIZ told J. LANGER that M. LANGER had met with

27  the unindicted co-conspirator, and M. LANGER and G. GALAVIZ

28  advised J. LANGER that 14 kilograms of cocaine had been delivered

11

1  to the residence.

2      52.  On November 17, 2006, by telephone using coded

3  language, PAYAN directed J. LANGER to deliver approximately

4  $415,000 in United States currency to ZAMORA when ZAMORA arrived

5  at J. LANGER's residence.

6      53.  On November 17, 2006, by telephone using coded

7  language, J. LANGER advised PAYAN that J. LANGER had counted the

8  money to deliver to ZAMORA and reported that the entire amount

9  was ready, except for $175, and J. LANGER and PAYAN agreed that

10  the payment should be $415,000.

11      54.  On November 17, 2006, ZAMORA drove a red Mustang

12  convertible to J. LANGER's residence in order to take delivery of

13  approximately $415,000 in United States currency, which

14  represented the proceeds of illegal drug sales.

15      55.  On November 17, 2006, by telephone using coded

16  language, J. LANGER advised M. LANGER that J. LANGER was going to

17  need to drive with ZAMORA the next day to deliver drug proceeds.

18      56.  On November 18, 2006, ZAMORA and CASTANEDA drove to the

19  residence of J. LANGER in Lake Elsinore, California, and

20  CASTANEDA drove from the residence with approximately $405,150 of

21  illegal drug proceeds in the form of United States currency.

22      57.  On December 18, 2006, F. BENITEZ and J. BENITEZ

23  directed an unindicted co-conspirator to transport approximately

24  1.35 kilograms of methamphetamine from Pomona, California and

25  distribute the methamphetamine in Kansas City, Missouri.

26      58.  On March 7, 2007, by telephone using coded language,

27  PAYAN directed J. LANGER to pack bundles of United States

28  currency for J. LANGER to deliver to an unidentified co-

12

1  conspirator.

2      59.  On March 8, 2007, J. LANGER and G. GALAVIZ met with

3  PAYAN in Mexicali, Mexico.

4      60.  On March 11, 2007, by telephone using coded language,

5  G. GALAVIZ told J. LANGER that ZAMORA had asked G. GALAVIZ to

6  store 30 kilograms of cocaine for ZAMORA, and J. LANGER told G.

7  GALAVIZ to charge ZAMORA a fee for storing the cocaine.

8      61.  On March 11, 2007, by telephone, G. GALAVIZ told J.

9  LANGER that G. GALAVIZ had told ZAMORA that G. GALAVIZ worked for

10 PAYAN, in the same way that J. LANGER worked for PAYAN, and M.

11 LANGER told G. GALAVIZ that G. GALAVIZ should tell ZAMORA not to

12 call on G. GALAVIZ' personal telephone.

13     62.  On March 13, 2007, by telephone using coded language,

14 PAYAN directed J. LANGER to transport drug proceeds to Mexico.

15     63.  On March 14, 2007, by telephone using coded language,

16 M. LANGER directed G. GALAVIZ to be ready to travel with J.

17 LANGER to Mexico in order to deliver drug proceeds, and that G.

18 GALAVIZ should bring luggage in order to deter possible attention

19 from law enforcement.

20     64.  On March 14, 2007, by telephone using coded language,

21 M. LANGER advised G. GALAVIZ that J. LANGER was en route and had

22 struggled to fit the currency into the load car, and M. LANGER

23 also advised that she and J. LANGER had previously driven to

24 Mexico at 70 miles per hour and had not encountered any

25 difficulties from law enforcement.

26     65.  On March 14, 2007, J. LANGER and G. GALAVIZ attempted

27 to transport approximately $267,770 in United States currency to

28 Mexico by hiding the money in the rear quarter panels of a Dodge

                                13

1 | van and driving the van to Mexico.

2 |    66. On March 14, 2007, by telephone using coded language,

3 | J. LANGER advised M. LANGER that J. LANGER and G. GALAVIZ had

4 | been stopped by law enforcement officers near the United States-

5 | Mexico border.

6 |    67. On March 14, 2007, by telephone using coded language,

7 | V. GALAVIZ advised M. LANGER that J. LANGER and G. GALAVIZ had

8 | been stopped and that officers searched the Dodge van but had not

9 | found the hidden currency.

10 |    68. On March 14, 2007, by telephone using coded language,

11 | M. LANGER asked V. GALAVIZ to send an unidentified co-conspirator

12 | to M. LANGER's residence in order to remove the kilograms of

13 | cocaine that had been stored at the residence so that the cocaine

14 | would not be found by law enforcement after the search of the

15 | Dodge van, and V. GALAVIZ told M. LANGER that G. GALAVIZ was

16 | planning to hide contraband at the residence, in anticipation

17 | that law enforcement officers would also search GALAVIZ'

18 | residence.

19 |    69. On March 14, 2007, by telephone using coded language,

20 | M. LANGER and V. GALAVIZ discussed plans to use J. LANGER's Jeep

21 | Cherokee to move kilograms of cocaine from M. LANGER's home to V.

22 | GALAVIZ' home, and V. GALAVIZ provided driving directions to M.

23 | LANGER, including warnings about the route to take in order to

24 | avoid contact with law enforcement.

25 |    70. On March 14, 2007, by telephone, V. GALAVIZ told M.

26 | LANGER that the unidentified co-conspirator would arrive at M.

27 | LANGER's residence in about half-an-hour in order to move cocaine

28 | out of the residence.

14

71. On March 14, 2007, by telephone using coded language, M. LANGER told V. GALAVIZ that V. GALAVIZ would have to handle moving the cocaine from M. LANGER's residence herself and that V. GALAVIZ should direct an unidentified co-conspirator to remove items from the residence.

72. On March 14, 2007, V. GALAVIZ and an unidentified co-conspirator drove to the residence of J. LANGER and M. LANGER in Lake Elsinore, California and removed items from the residence in order to prevent them from being found by law enforcement officers in a search of the residence.

73. On March 14, 2007, by telephone using coded language, M. LANGER advised PAYAN that law enforcement officers were using police dogs to search their car, but that the currency had been hidden well in the car, as always.

74. On March 14, 2007, V. GALAVIZ advised M. LANGER that law enforcement officers had located the $267,770 that they had hidden in the Dodge van.

75. On March 14, 2007, M. LANGER provided false explanations to V. GALAVIZ to explain the presence of the drug proceeds and told V. GALAVIZ not to let anyone into her residence voluntarily.

76. On March 14, 2007, by telephone using coded language, J. LANGER advised M. LANGER that J. LANGER and G. GALAVIZ would have to travel to Mexicali, Mexico to explain the seizure of drug proceeds to PAYAN, and M. LANGER stated that she understood what he meant.

77. On March 28, 2007, by telephone using coded language, PAYAN directed J. LANGER to distribute three kilograms of cocaine

15

1 | to AGUILAR.

2 |     78.  On March 28, 2007, by telephone using coded language,

3 | J. LANGER arranged to meet with an unidentified co-conspirator

4 | near the Interstate 10 freeway in Ontario, California, in order

5 | to deliver cocaine to AGUILAR.

6 |     79.  On March 28, 2007, J. LANGER and M. LANGER drove a Jeep

7 | Cherokee to a residence in Ontario, California and delivered

8 | approximately three kilograms of cocaine to AGUILAR.

9 |     80.  On March 28, 2007, AGUILAR possessed approximately 2.87

10 | kilograms of cocaine at his residence in Ontario, California.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about August 19, 2006, in Los Angeles County, within the Central District of California, defendants JORGE SERRANO PAYAN, also known as "the Doctor," and JOSEPH GALAVIZ LANGER knowingly and intentionally distributed more than 5 kilograms, that is, approximately 28.79 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

17

COUNT THREE

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)]

On or about August 19, 2006, in Los Angeles County, within the Central District of California, defendants OMAR BELTRAN and FRANCISCO BELTRAN knowingly and intentionally possessed with the intent to distribute more than 5 kilograms, that is, approximately 28.79 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

18

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about October 12, 2006, in Los Angeles County, within the Central District of California, defendants HUMBERTO LANDELL-RUELAS, also known as "Beto," and ANTONIO BARBA, JR., knowingly and intentionally distributed more than 5 kilograms, that is, approximately 12.97 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

## COUNT FIVE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about October 12, 2006, in Los Angeles County, within the Central District of California, defendant MARCOS VELASQUEZ-CASTRO knowingly and intentionally possessed with the intent to distribute more than 5 kilograms, that is, approximately 12.97 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

20

## COUNT SIX

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about December 18, 2007, in San Bernardino County, within the Central District of California, defendants JOSE BENITEZ GASTELUM and FRANCISCO BENITEZ GASTELUM knowingly and intentionally distributed more than 500 grams, that is, approximately 1.35 kilograms, of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about March 28, 2007, in San Bernardino County, within the Central District of California, defendants JORGE SERRANO PAYAN, also known as "the Doctor," JOSEPH GALAVIZ LANGER, and MARICELA LANGER knowingly and intentionally distributed more than 500 grams, that is, approximately 2.87 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

22

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about March 28, 2007, in San Bernardino County, within the Central District of California, defendant JESUS AGUILAR, also known as "Jesse Zamora," knowingly and intentionally possessed with the intent to distribute more than 500 grams, that is, approximately 2.87 kilograms, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

23

# COUNT NINE

[21 U.S.C. § 843(b)]

On or about March 14, 2007, in Los Angeles County, within the Central District of California, defendants MARICELA LANGER and VANESSA GALAVIZ knowingly and intentionally used a communication facility, to wit, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to possess with intent to distribute and the distribution of more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, a violation of 21 U.S.C. § 846.

24

COUNT TEN

[18 U.S.C. §§ 1956(h), 1956(a)(2)]

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about August 16, 2007, in Los Angeles and San Bernardino Counties, within the Central District of California and elsewhere, defendants JORGE SERRANO PAYAN, also known as "the Doctor" ("PAYAN"), JOSEPH GALAVIZ LANGER ("J. LANGER"), MARICELA LANGER ("M. LANGER"), GONZALO GALAVIZ ("G. GALAVIZ"), VANESSA GALAVIZ ("V. GALAVIZ"), ALBERTO DAVID RUBIO ZAMORA, aka "El Mudo" ("ZAMORA"), OMAR RIVERA CASTANEDA ("CASTANEDA") and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to transport, transmit or transfer and attempt to transport, transmit or transfer monetary instruments or funds from a place in the United States to a place outside the United States, knowing that the monetary instruments or funds represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to distribute cocaine, with the intent to promote the carrying on of said specified unlawful activity, and to conceal and disguise the nature, location, source, ownership, and control the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2).

///

///

///

///

25

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
    ACCOMPLISHED

    The object of the conspiracy was to be accomplished in
substance as follows:

    1.  The Grand Jury re-alleges and incorporates by reference
paragraphs 1 through 6 of Count One setting forth the means
described in the conspiracy charged in Count One.

    2.  PAYAN, J. LANGER, M. LANGER and ZAMORA conspired and
arranged with others to obtain cocaine.

    3.  PAYAN, J. LANGER, M. LANGER and ZAMORA sold cocaine to
others and collected the proceeds from the illegal distribution
of cocaine.

    4.  PAYAN, J. LANGER, M. LANGER and ZAMORA directed G.
GALAVIZ and CASTANEDA to transport large sums of United States
currency to co-conspirators and illegal drug traffickers in
Mexico.

C.  OVERT ACTS

    In furtherance of the conspiracy, and to accomplish the
object of the conspiracy, PAYAN, J. LANGER, M. LANGER, G.
GALAVIZ, V. GALAVIZ, ZAMORA, CASTANEDA and others known and
unknown to the Grand Jury, committed various overt acts on or
about the following dates, within the Central District of
California and elsewhere, including but not limited to the
following:

    1.  The Grand Jury re-alleges and incorporates by reference
paragraphs 1 through 80 of Count One setting forth the overt acts
of the conspiracy charged in Count One.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ELEVEN

[18 U.S.C. § 1956(a)(2)]

On October 31, 2005, in Los Angeles County, within the Central District of California, JORGE SERRANO PAYAN, also known as "the Doctor," and JOSEPH GALAVIZ LANGER knowingly attempted to transport monetary instruments or funds from a place in the United States to a place outside the United States, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2).

27

COUNT TWELVE

[18 U.S.C. § 1956(a)(2)]

On November 18, 2006, in Los Angeles County, within the Central District of California, defendants ALBERTO DAVID RUBIO ZAMORA, also known as "El Mudo," and OMAR RIVERA CASTANEDA knowingly attempted to transport monetary instruments or funds from a place in the United States to a place outside the United States, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2).

COUNT THIRTEEN

[18 U.S.C. § 1956(a)(2)]

On March 14, 2007, in Los Angeles County, within the Central District of California, defendants JORGE SERRANO PAYAN, also known as "the Doctor," JOSEPH GALAVIZ LANGER, MARICELA LANGER, GONZALO GALAVIZ and VANESSA GALAVIZ knowingly attempted to transport monetary instruments or funds from a place in the United States to a place outside the United States, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2).

A TRUE BILL

/S/
Foreperson

GEORGE S. CARDONA
United States Attorney

*[signature]* Deputy Chief, Criminal Division, FOR:

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

CHRISTOPHER BRUNWIN
Assistant United States Attorney
OCDETF Section

29